IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LAWRENCE J. CSERIPKO, GL-5673, )
    Petitioner, )
     )
    v. ) 2: 11-cv-411
     )
MICHAEL HARLOW et al., )
    Respondents. )

MEMORANDUM and ORDER

Mitchell, M.J.:

    Lawrence J. Cseripko, an inmate at the State Correctional Institution at Albion, has presented a petition for a writ of habeas corpus. For the reasons set forth below, the petition will be dismissed and because reasonable jurists could not conclude that a basis for appeal exists, a certificate of appealability will be denied.

    Cseripko is presently serving a life sentence imposed following his conviction, by a jury, of first degree murder at No. 1702 of 2004 in the Court of Common Pleas of Fayette County, Pennsylvania. This sentence was imposed on December 5, 2005.[1]

    An appeal was taken to the Superior Court in which the issues presented were:

1. Whether the court erred in failing to grant the petition for writ of habeas corpus?
2. Whether the court erred in failing to grant a change of venue or venire? Question withdrawn.
3. Whether the verdict was against the weight and sufficiency of the evidence in that the evidence proved only the appellant's mere presence at the scene, not that the appellant fired the shots that killed the victim?[2]

---

[1] See: Petition at ¶¶ 1-6.

[2] See: Exhibit 46 to the answer of the Commonwealth at p.4. We would be remiss if we failed to comment on the deplorable manner in which the Commonwealth filed the answer to this petition. The Court received an unbound packet containing well in excess of one thousand pages arranged in some indeterminable random order and was required to expend considerable time attempting to segregate the documents required to address the petition from the vast volume of superfluous materials submitted. The District Attorney is put on notice that in the future we will refuse to accept the challenge of performing his work and attempting to put the documents in some usable order, avoid losing any pages and expending considerable valuable time attempting to do so.

On February 13, 2008, the judgment of sentence was affirmed,[3] and leave to appeal to the Pennsylvania Supreme Court was not sought.[4] In affirming the trial court, the Superior Court did not reach the merits of the petitioner's claims but rather concluded that the appeal was subject to dismissal on procedural grounds for failing to comply with Rule 1925(b), Pa. R.App. P. which requires an appellant to file a timely notice of matters complained of on appeal.[5]

On May 9, 2008 Cseripko filed a post-conviction petition and relief was denied on December 17, 2008.[6] An appeal was taken to the Superior Court in which the issues presented were:

1. Was trial counsel ineffective when she failed to present the testimony of character witnesses?
2. Was trial counsel ineffective when she advised the appellant not to testify due to a prior conviction that did not involve any *crimin falsi* charges?[7]

On November 10, 2009 the denial of post-conviction relief was affirmed.[8] A petition for allocator was filed raising these same issues and on April 6, 2010 leave to appeal was denied.[9]

In the instant petition executed on March 30, 2011, the petitioner contends he is entitled to relief on the following grounds:

1. Failure of lower court to grant writ of habeas corpus prior to trial.
2. Evidence was insufficient to support the conviction and/or that the weight of the evidence favored a not guilty verdict.
3. Ineffective assistance of counsel for:
   (a) Failing to call character witnesses at trial.
   (b) Failing to call defendant as a witness at his trial.
4. Cumulative effect of previous errors denied petitioner a fair trial.[10]

The background to this prosecution is set forth in the February 13, 2008 Memorandum of the Superior Court citing the trial court's opinion:

> During the doe season in 1996, Bruce Babich, Rob Capan, Jamie Redmon, and [appellant] were hunting. After finding two deer without tags, the group was confronted by Horvat. Words ensued, and Horvat and [appellant] had a confrontation. The four of them then left the area and, as they saw Horvat drive

---

[3] See: Answer of the Commonwealth Exhibit No.52.
[4] See: Petition at ¶ 9(g).
[5] See: Answer of the Commonwealth Exhibit 52 at pp.6-7.
[6] See: Answer of the Commonwealth Exhibit No. 69 at pp.13 and 15.
[7] See: Answer of the Commonwealth Exhibit No. 41 at p.5.
[8] See: Answer of the Commonwealth, Exhibit 64.
[9] See: Answer of the Commonwealth, Exhibit 44 at p.6 and Exhibit 67.
[10] See: Petition at ¶ 12.

2

by, [appellant] got his license plate number. Later, Rob Capan called the game warden and reported what had transpired.

In a later interview conducted by a Pennsylvania State Police Trooper, [appellant] stated that, after the confrontation with Horvat, he, [appellant], got into his vehicle and followed Horvat to obtain the license plate so he could learn his identity. [Appellant] then contacted the state police and the game warden, but no one took any action.

During the year between the confrontation with Horvat and December 16, 1997, [appellant] called the game warden about the incident, as well as call[ed] the Pennsylvania State Police. Apparently upset because officials were not taking any action against Horvat, [appellant] told Dewey Steward, on more than one occasion, that if he ever caught Horvat out, he would kill him. Steward was aware of the hunting incident that occurred in 1996.

On that fateful day, December 16, 1997, Dewey Steward, who was renting the land where the homicide was committed, saw Horvat climb down from a tree stand where Horvat was hunting. After a brief conversation, Steward started walking home. As he walked home, Stewart saw [appellant] around 9:00 A.M. During their conversation, and knowing of the problem between [appellant] and Horvat, Steward asked [appellant] to stay away from Horvat. Stewart then went home.

While at home, Stewart heard two shots and, about 10 minutes later, he heard a muffled shot. The sound of the shots had come from the area where [appellant] was hunting. About 20 minutes after the third shot, [appellant] drove by Stewart's home without stopping.

When Horvat did not return from hunting that day, his family called the Pennsylvania State Police. A search of the property where Horvat was hunting was conducted and, shortly after midnight, Trooper Eric Sipes discovered Horvat's lifeless body in a stream on the property…

From a dragline of blood, it appeared that the body had been dragged. Additionally, there were blood soaks, chunks of deer meat, two deer gut piles, deer hair and the carcass of one deer. Samples of each were taken and sent for testing…

Thereafter, on March 11, 1998, {[a trooper]} participated in a search of [appellant's] home and seized deer steaks and chops from [appellant's] freezer.

During the ensuing investigation, Robert Miller was interviewed. Miller told police that [appellant] brought in a deer to be butchered around noon. The tag on the deer indicated that it had been killed by [appellant] on December 16, 1997, at 10:20. Miller processed the deer and gave it to [appellant]…

3

> [T]esting revealed that blood on the victim's pants matched the blood on the grass from the scene, the gut pile from the scene, and the deer steaks and chops from [appellant's] freezer, all matched and showed identical DNA profiles. In Dr. Casna's opinion, all these samples were from the same deer… a deer that had been killed and gutted on Dewey Stewart's property on December 16, 1997, apparently by Paul Horvat before he was shot to death, then carried off by [appellant] to be processed and stored in his freezer…
>
> In a final interview with [appellant], conducted on October 28, 2004, [appellant] finally admitted that he was in the same wooded area as Paul Horvat on the day he was killed. He also further admitted, finally, that he spoke with Dewey Steward on that morning.[11]

It is provided in 28 U.S.C. §2254(b) that:

> An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

This statute represents a codification of the well-established concept which requires that before a federal court will review any allegations raised by a state prisoner, those allegations must first be presented to that state's highest court for consideration. Preiser v. Rodriguez, 411 U.S. 475 (1973); Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484 (1973); Doctor v. Walters, 96 F.3d 675 (3d Cir. 1996).

It is only when a petitioner has demonstrated that the available corrective process would be ineffective or futile that the exhaustion requirement will not be imposed. Preiser v. Rodriguez, supra.; Walker v. Vaughn, 53 F.3d 609 (3d Cir. 1995).

If it appears that there are available state court remedies, the court must determine whether a procedural default has occurred. If a procedural default has occurred, the court must determine whether cause or prejudice exists for the default, or whether a fundamental

---

[11] See; Exhibit 52 to the Answer of the Commonwealth at pp.1-5.

miscarriage of justice would result from a failure to consider the claims. Carter v. Vaughn, 62 F.3d 591 (3d Cir. 1995).

In construing § 2254(d)(1), the Court in Williams v. Taylor, 529 U.S. 362, 412-413 (2000) stated:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.
> We must thus decide whether the state supreme court's "adjudication of the claim ... resulted in a decision that was *contrary to*, or involved *an unreasonable application* of, clearly established Federal law, as determined by the Supreme Court of the United States...
>
> A state court adjudication is "contrary to" Supreme Court precedent if it results from the application of "a rule that contradicts the governing law set forth" by the Supreme Court or is inconsistent with Supreme Court decision in a case involving "materially indistinguishable" facts ... "A state court decision fails the 'unreasonable application' prong only 'if the court identifies the correct governing rule from the Supreme Court's cases but unreasonably applies it to the facts of the particular case or if the state court either unreasonably extends a legal principle from the Supreme court's precedent to a new context where it should not apply or unreasonably refuses to extend the principle to a new context where it should apply...(citations omitted).

That is, the state court determination must be objectively unreasonable. Renico v. Lett, 130 S.Ct. 1855 (2010).

The first two issues which the petitioner seeks to raise here, namely the failure of the trial court to grant habeas relief prior to trial and the alleged insufficiency of the evidence to support the conviction were raised in his direct appeal. But, as a result of a procedural default in the

Superior Court the merits of the arguments was not reached.[12] In Coleman v. Thompson, 501 U.S. 722,750 (1991), the Court held:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice.

Because no such showing is made here, the petitioner has procedurally failed to raise these issue in the Pennsylvania appellate courts and no further consideration of these issues is warranted here.

Cseripko's third substantive issue alleging that counsel was ineffective in failing to call character witnesses at trial, and failing to call the petitioner to testify in his own defense was raised in his post-conviction appellate proceedings and for this reason is properly before this Court for consideration.[13]

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court explained that there are two components to demonstrating a violation of the right to the effective assistance of counsel. First, the petitioner must show that counsel's performance was deficient. This requires showing that "counsel's representation fell below an objective standard of reasonableness." Id. at 688; see also Williams v. Taylor, 529 U.S. 362, 390-91 (2000). Second, under Strickland, the defendant must show that he was prejudiced by the deficient performance. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687, 104 S.Ct. 2052. To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The Strickland test is conjunctive

---

[12] While dismissing the appeal for violation of state procedural rules, the Superior Court did note in footnote number 4 that "were we to review the issues presented in the brief of appellant, we would find that appellant has not presented any argument that warrants the grant of relief." This clearly was not a merits determination but rather a gratuitous comment by the court.

[13] We note that in his petition here, Cseripko as Ground 3 cites to ¶11 of his petition in which he claims to have raised eight claims of ineffective assistance of counsel but appears to conclude that there are only two issues, i.e., counsel's failure to call character witnesses and the petitioner to testify at his trial. However, since in his appeal he only raised these latter two issues (Exhibit 41 at p.5) only these two issues will be addressed here.

and a habeas petitioner must establish both the deficiency in performance prong and the prejudice prong. See Strickland, 466 U.S. at 687; Rainey v. Varner, 603 F.3d 189,197 (3d Cir.2010). As a result, if a petitioner fails on either prong, he loses. Rolan v. Vaughn, 445 F.3d 671 (3d Cir.2006).

      At the hearing held on Cseripko's post-conviction petition, the petitioner testified that his attorney advised him not to testify (TT.6)[14]; that he wanted to call character witnesses to testify in his behalf but was not permitted to do so by the court (TT.6-8, 15); that his attorney advised him not to testify because of his prior firearm conviction (TT.8, 13, 16) and that the court fully advised him of his right to elect to testify (TT.13). A neighbor of the petitioner's testified that the petitioner enjoyed a reputation in their community as a non-violent person (TT.19, 21) and that he had no recollection of being asked to appear as a character witness (TT.24).

Petitioner's trial counsel testified that the petitioner did not have a prior record of a conviction for crimen falsi (TT.39); that the basis for her defense was that the Commonwealth lacked the ability to prove its case beyond a reasonable doubt (TT.39); that she discouraged the petitioner from testifying because he lacked an adequate explanation of some of the facts of the case; that the petitioner harbored a dislike for the victim and that she believed the petitioner's demeanor would not curry favor with the jurors (TT.39, 40, 53); that this recommendation was a part of her trial strategy (TT.40); that while her investigator had spoken to a number of potential witness, she opted not to call character witnesses because some were not available and she feared the consequences of introduction of the petitioner's prior record through those witnesses (TT.43-45); that the decision not to call character witnesses was a matter of trial strategy (TT.44, 52, 55) and that she was aware that although deer DNA had not previously been introduced in Pennsylvania prosecutions, it had been successfully introduced in other jurisdictions (TT.48, 54).

Thus, defense counsel's recommendation that the petitioner not testify and her decision not to call character witnesses were matters of trial strategy. As a matter of trial strategy, the soundness of these determinations is not subject to second guessing here.

---

[14] All references to testimony refer to pages in the transcript of the post-conviction hearing held on September 19, 2008, Commonwealth's Exhibit 33.

7

Rolan v. Vaughn, supra. Accordingly, because counsel's performance cannot be deemed constitutionally deficient and because there is no demonstration that the petitioner's conviction was secured in a manner clearly contrary to established federal law or involved any unreasonable application of that law, he is not entitled to relief here. 28 U.S.C. 2254(d)(1).

      For these reasons, the petition of Lawrence J. Cseripko for a writ of habeas corpus will be dismissed, and because reasonable jurists could not conclude that a basis for appeal exists, a certificate of appealability will be denied.

      An appropriate Order will be entered.

ORDER

AND NOW, this 27th day of June, 2011, for the reasons set forth in the foregoing Memorandum, the petition of Lawrence J. Cseripko for a writ of habeas corpus is DISMISSED and because reasonable jurists could not conclude that a basis for appeal exists, a certificate of appealability is DENIED.

s/ Robert C. Mitchell<br>
United States Magistrate Judge